of 17-2072. Thank you, your honors. May it please the court. Tom Byrd from the Kelleher firm in Albuquerque here on behalf of the defendants. The reason the court should reverse the district court's denial of qualified immunity in this case is because the plaintiffs have not carried their burden in relationship to the second strand of the qualified immunity analysis. That requirement requires that the plaintiffs show that the defendants were on notice that their conduct was violative of clearly established federal law. Carrying that burden usually entails citing either the United States Supreme Court or Tenth Circuit precedent, which is closely analogous to the facts at issue in the case. A high degree of generality is unacceptable. And the point of that requirement is to demonstrate that the defendant understood that the specific conduct at issue violated a federal right. That requirement is not satisfied in this case. As a matter of fact, controlling precedent demonstrates that it's improper to look to violations of state law in an attempt to satisfy that requirement. Of course, the conversation has to begin with the Davis case. The Davis case involved a Florida Highway Patrol employee who was working for a county with the permission of the department. And he decided, after being asked to relinquish his position with the county, that he had spent too much money on uniforms. So he refused to quit. So he was fired after a long exchange of letters and conversations. And he later sued, claiming that because the department had violated Florida statutes, regulations requiring pre-termination, post-termination hearings, that the conduct violated his due process rights. The Fifth Circuit and the district court, using a totality of the circumstances approach, decided that the violation of the Florida regulation could be folded into the qualified immunity and that that violation disqualified the defendants from that immunity. The U.S. Supreme Court rejected the totality of the circumstances of approach and concluded that the existing qualified immunity test, the traditional one, entailed two requirements, demonstrating a violation of federal law and demonstration that the federal law was clearly established. It flatly rejected as irrelevant the notion that violations of state law could be folded into the qualified immunity analysis. The ongoing force and influence of Davis is illustrated by this court's recent decision in Stanley v. Gallegos. In that case, a divided panel of this court, which included Judge Holmes, considered the possibility of adopting a scope of authority exception to the qualified immunity test. Judge Hartz identified one of the problems with adopting such an exception as being the close relationship, perhaps indistinguishability, between what Davis prohibited, which is folding in determinations of whether the conduct violated state law, and the question of whether the conduct exceeded the authority conferred on the defendant by state law. Judge Holmes disagreed that such an exception should be even entertained, concluding that it was flatly incompatible with Davis and its progeny. The Stanley v. Gallegos opinion is approximately a year old, and I point to it as an indication that Davis retains its force as the poll star. But the question is, what force does it have here? Because I think arguing, isn't their argument a little bit different? I mean, the argument in Davis was, that was rejected, was that a violation of state law could disqualify you from essentially seeking to be on the playing field for qualified immunity. That was the issue in Stanley v. Gallegos, too. Here, it's my understanding, what they're arguing is, that in the face of this clear statute that dictated your obligations, you did not go forward, and therefore you violated federal law, substantive due process law, that by committing conscious shocking activity, and that if you were to look at the, that they didn't really need to have an on-point case, because it's clear this is outrageous. That, at least as I understand it, is their argument, and if that is their argument, that's a little different than Davis. I'm not saying Davis is irrelevant, I'm just saying that's not, the argument that was rejected in Davis, I don't, tell me whether you agree, isn't that a different argument than the one we have here? Your Honor, I see the point. I still see Davis as giving us the answer to that question. Davis still says that you have to point to clearly established federal law, which means that you have to demonstrate that in these circumstances, that this conduct would violate substantive due process standards. And we don't have any precedents cited either by the district court or by the plaintiffs that satisfy that requirement. Judge Parker cited Robbins v. Wilkie, and he pointed out a quote that dealt with a violation of a Wyoming extortion statute. But that analysis considered whether the violation of that statute could serve as a predicate act for a RICO violation. So it really doesn't serve the purpose that we're looking for here, which is a precedent that would tell my clients that this conduct violated substantive due process standards. In the same vein, the two cases cited in the plaintiff's second brief on cross-appeal, a Fifth Circuit case and a Sixth Circuit case, neither of them from the Tenth Circuit, don't deal with substantive due process, don't represent the weight of authority. Those cases also don't satisfy the notice requirement that the second prong of the qualified immunity analysis entails. Have we looked at State law to determine the question of substantive for these purposes? Your Honor, it can certainly be a part of an analysis. And I agree that our clients should have done what they told the New Mexico Supreme Court they were going to do. They should have promptly implemented the demands of the statute. They didn't do that. And this is for a contempt citation or not so quick. Had they done so, there would be no dispute here about the decision about whether this was substantive in nature federally. I assume that's a dispute at all. That has to be correct, Your Honor. I can't imagine this lawsuit would have gone, this dispute would have continued any further. And I say this lawsuit, it's a whole series of lawsuits. There's a long history of disagreement, litigation. But what you say has to be true, is that the whole matter would have concluded if Mr. Dean and Ms. Secretary Busse had done what they told, their lawyer told the New Mexico Supreme Court they were going to do. That is not the answer to the question of whether qualified immunity is appropriate in this case here. The missing ingredient, the thing that indicates that the plaintiffs have not carried their burden is their failure to cite any law that existed at the time of this misconduct that would have told the defendants that what they were doing was a violation of substantive due process. Not diverting from that, but I just want to be clear. Is it your position, is it your position at the time that, until 2015, until the Supreme Court rule, was it his position that when you look at the statute, you have to look at the other subsections and therefore they have to inform the analysis and that was really the bone of contention between your client and the union parties? Yes, Your Honor. And you can look at this statute and you can make your own decision. But the cold hard reality is the New Mexico Supreme Court decided this statute is unambiguous, that it imposes a duty on my clients to do what they said they were going to do at the second hearing. So the whole issue about ambiguity and litigation and stay, I mean, those arguments were essentially relinquished when the lawyer from my clients told the New Mexico Supreme Court they were going to do this. So then it becomes a question of whether that violation of state law satisfies the second strand of the qualified immunity analysis. And my point is, we've said this in the brief many times, you said this in the Gallegos case, you can't point to the clarity of state law to satisfy that requirement. The question is whether federal law was clearly established and if you're looking at the clarity of state law, you're barking up the wrong tree. And that's the mistake that the district court made in this case. But what you're saying to me, that you're asking us to look at a, at best, you're looking at us to look at an ambiguity of the question as to whether this is a federal substantive due process right, and to look at that ambiguity as a rationale for violating or for failing to execute clear agreement that you had with the state of New Mexico. I mean, it just seems to be almost to import comedy principles into the argument. You're asking the federal courts to justify a clear renunciation of state court orders of a federalism question. Your Honor, you gave some excellent advice earlier today, which is not to be bashful, so I won't. And I disagree with the premise of your question. I don't think we're talking about, you know, whether the statute's ambiguous or not ambiguous. I don't think we're talking about comedy. I think we're talking about a failing on the part of the plaintiffs and on the part of the district court to identify a precedent, any precedent, that would have satisfied the second strand of the qualified immunity, the notice requirement of the qualified immunity. Could I ask? Let me ask this question, though. On the clearly established law of PROM, okay, and I know that's where your focus is, part of that analysis is going to be, is going to turn on whether there's a case that matches this fact pattern, okay? Yes. And so I just want to be clear on, I thought I understood from your brief that part of what you identified as being unique about this case is the fact that there was an administrative stay in place all of the time up until the Supreme Court ruled. In other words, even after the 2011 statement, we're going to fix it, that at least I understood you to say your client could have harbored some uncertainty as to whether he could act on that 2011 directive because of the stay. Did I miss that? That is the argument, Your Honor. And I guess what I'm saying today is that once my client's said we're going to do this, that excuse probably no longer sufficed. But that's part of it. Judge Parker decided that maybe this is conscious shocking in the context which will have to be developed by discovery. So you're not saying your client harbored any uncertainty? I mean, are you walking away from that view? I'm saying that that's not relevant to the point I'm emphasizing today, which is the second strand of the immunity analysis. And that is something that's different about this case. But I mean, I don't think our opponent cited anything that even remotely resembles these circumstances in their attempts to satisfy the second strand of the analysis. I'd like to reserve the rest of my time for rebuttal, if I might, Your Honor. Good morning, Judge Lucero. Good morning, Judge Iyde. Good morning, Judge Holmes. And may it please the Court. Shane Utes on behalf of the Petitioner's Cummings et al. I'm going to address three issues. The first issue is the substantive due process issue. The second issue relates to Selina Bussey's dismissal, which is part of our cross-appeal. And the third issue relates to the dismissal of the procedural due process issues. Obviously, I'll deal with the substantive issue first. Can I sidetrack you for a second? Yes, sir. Why do we have pendant jurisdiction here? I mean, you make what I saw as a fairly conclusory statement that we had it. And, I mean, why is that enough? I mean, you know, in order to establish pendant jurisdiction, you have to make it clear that there's an intertwining of the actions. I'm talking about your cross-appeal. I understand, Judge Holmes. And I'm left a little concerned that you didn't do enough there. I mean, so I think, I don't know whether you can make up for what may be a deficiency in your brief now, but you can try. Certainly, if you think there's a deficiency in the brief, I understand that. It seems to us that they are inextricably intertwined. We're talking about Selina Bussey, who, as we indicated in our brief, made a representation to the New Mexico Supreme Court that she would take care of it. And those facts are inextricably intertwined with the issues. But note the argument that was made today, and that's, which is perhaps an interesting strategic choice. The argument that's made today is, I don't care about that. All I'm saying is, give me some clearly established law. And you guys haven't done it. So under that scheme of things, it doesn't, it's irrelevant what Ms. Bussey said or her counsel did. What's relevant is whether you can come up with clearly established law. Certainly, the argument made today is different than the argument made at the district court. It's, in many respects, different than the argument made in the brief. But as the issue was briefed in the district court, as the issue was briefed in the court of appeals, the issue of Ms. Bussey's involvement, the issue of whether or not procedural due process had been violated is, from our opinion, from our perspective, intertwined completely with the allegations on substantive due process. So you're saying you could not, we could not rule in favor of the appellant without reaching a question, the questions that are in your appellate brief? Because, I mean, we could theoretically, if we were to accept the position that there is no clearly established law, it would seem that your appellate brief becomes irrelevant. I mean, it doesn't matter. Well, as you phrased the question, I can't honestly disagree with you. You certainly could decide the issue that was raised on appeal without deciding the other issues. It appears to us, appears to the plaintiffs in this case, that resolution of Ms. Bussey at this point, resolution of the procedural due process question at this point, would assist the parties. And the questions are very much intertwined in the analysis and in the facts. Go ahead. All right. So let's talk about substantive due process. The question under Davis versus Scheer is whether it would be clear to a reasonable officer that his conduct, that a given conduct, is unlawful in the situation. Or as briefed, plaintiffs must show that Bussey and Dean would have known that their conduct violated clearly established law at the relevant time. Now, the case, the case as developed by Judge Parker, as issued in his opinion, makes very clear that the Supreme Court admission. The admission by the state of New Mexico, by the Workforce Solutions, constituted an admission of a legal duty and a clear interpretation of the statute. The Supreme Court said that this is a clear responsibility. And let me be clear here, what happened in the Supreme Court. The state of New Mexico didn't say to the Supreme Court, we're not going to be able to set the new rates in four to five months. We have satisfied our obligation by doing nothing. They didn't say anything to the Supreme Court about the fact that there was a stay which would prevent them from executing their duty. They said, we will do it in four to five months. And what the attorney said is, the secretary, Selina Bussey, has assured me, and I'm assuring the court, that she's intent on getting this done. So the existence of a legal duty was clear and was admitted in 2011 by the Department of Workforce Solutions. The Supreme Court also indicated, as we all know, that the duty in question was identified as ministerial. So there was a clear and obvious duty, a clear and obvious duty, by the way, which was admitted by the Department of Workforce Solutions in court in front of five Supreme Court justices. The third really compelling reason from our perspective is that Judge Parker identified the action of the state of New Mexico as shocking of the conscience. The bottom line with regard to that issue is that there have been six judges who have evaluated the conduct, the actions of the New Mexico Department of Workforce Solutions. Here's the way that they've described it. These are not my words. These are the words of Supreme Court justices. Inexcusable, unacceptable, irresponsible and shocks the conscience. The violation of the state law is described by Supreme Court justices in that manner. Yes. And there are two prongs to qualified immunity. And at most, what you've argued would get you number one, would get you a violation of the Constitution. It doesn't get you clearly established law. And what I find interesting about your consistent reference to the Supreme Court is there's only one Supreme Court I'm concerned about for clearly established law. That is the U.S. Supreme Court. So why is it relevant at all what the New Mexico Supreme Court said? Well, so you hold them in contempt. They violated a state law duty, did they not? Absolutely, Judge Holmes. OK, then why does that matter? Davis versus Scheer. Why does that matter at all? Both under Davis versus Scheer and under Gallegos, I think clearly indicate that a violation of a state law is part of the analysis. There needs to be a violation of the federal law. And we have argued in our brief that there's clear violation of federal law. And that is the substantive rights of a wage earner. And I'll point the court to the cases that we've identified. Since 1969, the United States Supreme Court has identified wages as a form of property interest. And that's the Snydack case, Snydack versus Family Financial Corporation. 1970, Goldberg versus Kelly said that public assistance funds are property subject to the due process clause. We identified a Southern District case of Texas. Associated Builders and Contractors of Texas versus United States Department of Energy, which in that case, the court found a property interest in the prevailing wage and requiring due process in its determination. Ames Construction, a district of Minnesota, a district of Minnesota case, found property interest in the employer's payments from the government under the Davis-Bacon Act. And we can go on and on. And you can go on and on. But those are on and on about things that are not really, how do they establish clearly established law? A district court in Minnesota, I mean, that's not putting anybody on notice of anything. If what you're talking about are general rights, recognizing the value of property rights of wage earners, well, Mullenix versus Luna, talk to me. I mean, Mullenix versus Luna said that general right doesn't mean anything in the clearly established law context. Judge Holmes, we have a pretty unique fact situation. We do. And so tell us. How we get clearly in one is one of the things Judge Parker said in his opinion is that we shouldn't go looking through every single fight, every single case to find a comparable set of facts, a comparable set of facts. But instead, we should look at general principles. And in this case, the general principle is that you have the right, a substantive property right in receiving a specific wage. When you look at this case, when you look at the actual people who have been harmed, you have thousands of workers in the state of New Mexico who are entitled to a specific wage rate and were denied that specific wage rate. And that that that right to receive the wage rate that they did not receive is a right that in general terms has been confirmed over and over by courts across the United States, federal courts. They haven't specifically opined on a state little Davis-Bacon Act, but they have specifically opined on rights that employees have to wages at a specific wage rate. We identified the Fifth Circuit decision, which was a prison case, a case involving prisoners who were entitled to wages in a prison for work that they performed in prison. That's about as close as we could find. But each one of those cases identify a clear, substantive right to receive wages at a specific rate. The steps that were the officers present at the time that they made these representations to the New Mexico Supreme Court, were they represented either in person or by counsel at that time? I was not counsel for these plaintiffs and wasn't involved in that case and can't personally represent you, Judge Lucero, whether or not they were there. And what about the federal officials? Do we know anything about the, who represented the federal officials? What federal officials? The, the, the, the officers, the gentleman you identified in this, is it Busse? Selena Busse. Busse, who were representing them before the New Mexico Supreme Court proceedings? They were represented by counsel. I, I, I couldn't, again, tell you whether it was the State Attorney General, counsel assigned by the Department of Workforce Solutions, or private counsel, but they were represented by counsel. I obviously was involved in the 2015 case before the New Mexico Supreme Court. And those representations are in the record? Absolutely. They're in the record. And if you look at Judge Parker's opinion, he cites to the record, he cites to the oral argument where the attorney for Selena Busse said, the Secretary has personally represented to me, and I am representing to you, the New Mexico Supreme Court, that this will be done within four to five months. So we're not talking about a speculative representation, but a very explicit representation. Now, counsel for the state says that we're missing these states, that we're missing these two steps. The first step is that the state law provision violated was clearly established from an objective standpoint. I hear them to say they're walking back on that today, that there was a clear violation of state law from an objective standpoint, and we all know and we all understand that. The second stamp strand was that there was a violation of federal law, but I don't think that that accurately represents the law. The law is that there is a clear state law, which then amounts to a violation of the federal law. We have a violation of state law. We have an admitted violation of state law. Does that amount to a violation of a clearly established federal right? Yeah, it does. The right to receive wages that the government is legally obligated to pay is a substantive right, and there's no precise case on point, but there are many general cases which stand for this proposition that this is a substantive right, and it should be allowed. Looking back at what Qualified Immunity is designed to get at, I'm struggling to find a situation in which you could view Director Dean as sitting there saying, well, even if he's acknowledging that he's ignoring the representation of 2011, that I will face federal liability for doing this. I mean, that really is what this is about. I mean, there are remedies that your clients could have had for violations of state law. Presumably, he could have been held in contempt, but I don't know what it could have been. Sure. What I'm saying is there would presumably be some remedy relative to disobeying state law, but why would that put him on notice? And some of the language in these cases is fair warning. Why would he have fair warning that he would be held in the federal court and face federal liability? Let me answer that question in two ways, Judge Holmes. First, what you all are contemplating is giving someone immunity. Immunity for acts which have been described by the New Mexico Supreme Court as inexcusable, unacceptable, and irresponsible. That's what you're deciding, whether you're going to give inexcusable acts immunity. Now, the question bleeds into the procedural due process. The New Mexico Supreme Court said that there was no other remedy in that situation in which they granted the writ in 2015, that there wasn't a speedy remedy. There wasn't an adequate remedy. The reason we are here in federal court is because there is no adequate remedy under state law to recover the wages that thousands of New Mexico employees did not receive. It seems to me that we may not be in this court and that perhaps Judge Holmes would be correct, but for the fact that if the state officials or the federal officials had remained mute, they had done nothing and the New Mexico Supreme Court had ruled, which would be a state court ruling, then you would have to make a determination of whether the violation of a state court ruling constitutes a violation of a federal substantive right in the abstract. But that's not this case. In this case, you had the officials actually represent to the court that they were going to do so. And that seems to me to elevate this case, as Judge Parker said, to move it into an entirely different area, and that is the area of whether the deprivation of those wages that were agreed to constitute a substantive right. I just don't see it. I don't see it. I agree, ultimately, Judge Lucero, and when we get into, I've got 20 seconds left to deal with the procedural due process issue, and I would just remind the Court of Matthews v. Eldridge, which says that procedural due process involves meaningful time and a meaningful manner. The New Mexico Supreme Court ruled in 2015 that there was no mechanism by which the employees could be paid their wages and properly compensated. That's why we are here. That's why there's a procedural and a substantive violation of due process. Thank you. Mr. Yutes is right in saying that the second prong of the qualified immunity analysis doesn't require a scavenger hunt. You don't have to find a case that's precisely identical, exactly on point, but it's really important to stress here the theory that the plaintiffs were pursuing, which is substantive due process. We cited cases that described that area of the law as uncharted, lacking in guideposts. So the nature of the claimant's argument that it is these wages that are not substantively protected, or are you saying that as a general proposition, the due process clause substantively does not protect the wages of Americans earned in their place of employment, whatever that may be? No, Your Honor. Our position is that there weren't precedents that would have provided fair notice, the warning requirement that the second strand of the qualified immunity is intended to accomplish. There was nothing out there in the area of substantive due process that would have told Mr. Dean or Miss Bussey that what they were doing here violated this uncharted area of the law with few guideposts. So not only aren't there any precedents that directly address substantive due process in settings like this, but the nature of the law itself would lend itself to the necessity of something fairly close to these circumstances to provide the notice that would satisfy that requirement. I disagree entirely with what Mr. Yates said about state law violations being tantamount to a violation of federal law. That's that's exactly the opposite of what Davis says. That's exactly the opposite of what Judge Hartz's opinion and Judge Holmes's opinion said in the Gallegos case. There's no law that says that you can point to a violation of state law and that carries you directly to the conclusion. That's not the argument that's being made. Your Honor, I think it is. I think I think that what our opponents are saying is what's clear here is the New Mexico statute. It's so clear that it is. To me, what we have here is a state court determination that a given wage is the appropriate wage due to a class of employees and that that the federal officials agreed that they would in effect allow the payment of those wages. And that now we have a collateral attack on that agreement by saying, oh, no, as a matter of substantive due process, federal officials can violate their word at any time and at any will. And that that is what is before us to determine. Your Honor, my time's expired. May I take just a moment? It's the defendants here are state officials and they're alleged to have violated the state law. And the issue is whether that violation of state law translates automatically into a determination that they violated substantive due process. And there's simply no authority that that supports that conclusion. Thank you, Your Honors.